### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**JAMES MONROE KINGSMORE,**

      **Plaintiff,**

      **vs.**                                     **Civ. No. 15-512  MV/KK**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**


### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14) filed December 8, 2015, in support of Plaintiff James Monroe Kingsmore's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claims for Title II disability benefits and Title XVI supplemental security income benefits. On February 26, 2016, Plaintiff filed his Motion to Reverse and Remand for Rehearing, With Supporting Memorandum ("Motion"). (Doc. 19.) The Commissioner filed a Response in opposition on June 9, 2016 (Doc. 23), and Plaintiff filed a Reply on June 23, 2016. (Doc. 24.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and being fully advised in the premises, the Court recommends that the motion to reverse and remand be **GRANTED.**

---

[1] An Order of Reference (Doc. 8) was entered on September 25, 2015, referring this case to the undersigned Magistrate Judge to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

## I. Background and Procedural Record

Claimant James Monroe Kingsmore ("Mr. Kingsmore") alleges that he became disabled on October 31, 2008, at the age of forty-four, because of Hepatitis C, cirrhosis, anger management, and left leg problems.  (Tr. 246, 251.[2])  Mr. Kingsmore completed "four of more years of college" in May 1994, and had special job training as a flight tech in 1982.  (Tr. 255.) Mr. Kingsmore worked as a construction electrician.  (Tr. 252.)

On April 21, 2009, Mr. Kingsmore protectively filed[3] an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, and concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.   (Tr. 199-200, 203-05, 247.) Mr. Kingsmore's applications were initially denied on September 11, 2009.  (Tr. 84-86, 101-05.) Mr. Kingsmore's applications were denied again at reconsideration on June 3, 2010.  (Tr. 87-89, 111-17.)  On June 16, 2010, Mr. Kingsmore requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 118-19, 181-82.)  The ALJ conducted a hearing on July 3, 2013.  (Tr. 60-83.)  Mr. Kingsmore appeared in person at the hearing with non-attorney representative Nancy Fortino.[4]  (Id.)  The ALJ took testimony from Mr. Kingsmore (Tr. 65-66, 71-75), Nancy Fortino (Tr. 66-71, 75-78), and an impartial vocational expert ("VE"), Diane Weber (Tr. 78-82).

On December 16, 2013, the ALJ issued an unfavorable decision.  (Tr. 33-53.)   In arriving at her decision, the ALJ determined that Mr. Kingsmore had not engaged in substantial

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on December 8, 2015.

[3] Protective Filing Status is achieved once an individual contacts the Social Security Administration with the positive stated intent of filing for Social Security Disability benefits.  The initial contact date is considered a claimant's application date, even if it is earlier than the date on which the Social Security Administration actually receives the completed and signed application.  *See* 20 C.F.R. §§ 404.614, 404.630, 416.325, 416.340, 416.345.

[4] Mr. Kingsmore is represented in this proceeding by Michael Armstrong.  (Tr. 31-32.)

gainful activity since his alleged disability onset date.   (Tr. 39.)   The ALJ found that

Mr. Kingsmore suffered from severe impairments of Hepatitis C, cirrhosis of the liver, history of

drug and alcohol abuse, mood disorder, intermittent explosive [dis]order, and personality

disorder.   (*Id.*)   The ALJ found that these impairments, individually or in combination, did not

meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix

1. (*Id.*)

Because she found that Mr. Kingsmore's impairments did not meet a Listing, the ALJ

then went on to assess Mr. Kingsmore's residual functional capacity ("RFC").   The ALJ stated

that

> [a]fter careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 20 CFR 416.967(b) except no climbing ladders, ropes, or
> scaffolds; no kneeling, no crawling.  He can understand, remember, and execute
> simple instructions and tasks in a work environment that is primarily object
> focused.  He should have only occasional interaction with the public.

(Tr. 42.)   Based on the testimony of the VE, the ALJ concluded that Mr. Kingsmore was unable

to perform any past relevant work, and that considering Mr. Kingsmore's age, education, work

experience, and RFC, there were jobs that existed in significant numbers in the national economy

that Mr. Kingsmore could perform and he was therefore not disabled.  (Tr. 51-53.)

On April 15, 2015, the Appeals Council issued its decision denying Mr. Kingsmore's

request for review and upholding the ALJ's final decision.   (Tr. 1-3.)   On June 17, 2015,

Mr. Kingsmore timely filed a Complaint seeking judicial review of the Commissioner's final

decision. (Doc. 1.)

## II.  Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision[5] is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  In other words, the Court does not reexamine the issues *de novo*.  *Sisco v. U.S. Dep't. of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court's examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir.

---

[5] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

2004)).  Thus, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court would have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  As such, even if a reviewing court agrees with the Commissioner's ultimate decision to deny benefits, it cannot affirm that decision if the reasons for finding a claimant not disabled were arrived at using incorrect legal standards, or are not articulated with sufficient particularity. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "[T]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Id.* at 1009-10.  Rather, the ALJ need only discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.*; *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014).

### III. <u>Applicable Law and Sequential Evaluation Process</u>

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  To qualify for disability insurance benefits, a claimant must establish a severe physical or mental

impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[6] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261.  If the claimant can show that his impairment meets or equals a Listing at step three, the claimant is presumed disabled and the analysis stops. If at step three, the claimant's impairment is not equivalent to a listed impairment, before moving on to step four of the analysis, the ALJ must consider all of the relevant medical and other evidence, including all of the claimant's medically determinable impairments whether "severe" or not, and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1)-(3), 416.945(a)(1)-(3).  This is called the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1545(a)(1) & (a)(3), 416.945(a)(1) & (a)(3).  The claimant's RFC is used at step four to determine if he can perform the physical and mental demands of his past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e).  If the claimant establishes that he is incapable of meeting those demands, the burden of proof then shifts to the Commissioner, at step

---

[6] 20 C.F.R. pt. 404, subpt. P. app. 1.

five of the sequential evaluation process, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Id.*, *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

## IV. Analysis

Mr. Kingsmore asserts two arguments in support of reversing and remanding his case, as follows: (1) the ALJ failed to properly weigh the opinion of treating psychologist Dr. Stuart Kelter; and (2) the ALJ picked and chose from State agency nonexamining medical consultant Jill Blacharsh, M.D.'s opinion. The Court finds grounds for remand as discussed below.

### A.     The ALJ Failed to Properly Weigh Dr. Kelter's Opinion

Mr. Kingsmore began mental health care with Stuart Kelter, Psy.D., on September 25, 2009. (Tr. 465.) Mr. Kingsmore reported rages, insomnia, anxiety, depression, and past intense

drug abuse (especially methamphetamines).  Dr. Kelter noted that Mr. Kingsmore was hyped up, a bit tangential, somewhat agitated, and concerned about irritability.  (Tr. 465.)  Dr. Kelter diagnosed Mr. Kingsmore as follows:

| | |
|---|---|
| Axis I: | Methamphetamine Dependence, early remission<br>Intermittent Explosive Disorder |
| Axis II: | Antisocial Personality Disorder |
| Axis III: | Hepatitis C; severe allergies |
| Axis IV: | Health problems; prolonged withdrawal effects;<br>Possible neurological damage from meth abuse |
| Axis V: | 45[7] |

(Tr. 465.)  Dr. Kelter noted a treatment plan that included learning relaxation and anger management skills, preferably without additional medication.  (*Id.*)  He expected treatment to last for years, with counseling sessions to begin weekly at first and then taper off.  (*Id.*)  Dr. Kelter saw Mr. Kingsmore weekly, sometimes biweekly, from September 25, 2009 until April 2, 2010, for a total of 27 individual counseling sessions.  (Tr. 458-60, 462-63, 465.)  Dr. Kelter's notes ended on April 2, 2010.  (Tr. 583-84.)

On November 19, 2009, Dr. Kelter wrote a "To Whom It May Concern" to the Medical Cannabis Program advocating on Mr. Kingsmore's behalf for his use of medical marijuana. (Tr. 461.)  Dr. Kelter stated that given Mr. Kingsmore's multiple psychiatric diagnoses[8] that "cannabis would likely be a safer, more effective, and less physically addictive option than

---

[7] The GAF is a subjective determination based on a scale of 100 to 1 of a "clinician's judgment of the individual's overall level of functioning."  *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32.  A GAF score of 41-50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job).  *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 34.

[8] Dr. Kelter added an additional Axis I diagnosis of post-traumatic stress syndrome.  (Tr. 461, 462.)

available psychiatric medications." (*Id.*) Mr. Kingsmore's medical marijuana permit was approved in December 2009. (Tr. 459.)

On March 17, 2010, Dr. Kelter wrote a "To Whom It May Concern" letter to the Arizona Adult Probation Department and reported, *inter alia*, that "since beginning his use of the medical marijuana in December, 2009, James has needed no other psychiatric medication." (Tr. 457.) Dr. Kelter also reported that Mr. Kingsmore had "shown an intense commitment to his recovery from substance abuse and making dramatic progress in a relatively short period of time in building a new, responsible, and productive life, making full use of his high intelligence, outgoing personality, and wide-ranging interests." (*Id.*)

On July 5, 2013, Dr. Kelter wrote a letter to the Social Security Administration on Mr. Kingsmore's behalf and explained that Mr. Kingsmore had been recently released from nearly two years of incarceration on drug charges that were subsequently dropped. (Tr. 583-84.) Dr. Kelter further explained Mr. Kingsmore's mental health history and stated, *inter alia*, that the recent incarceration had compounded his posttraumatic stress disorder and that his hyperarousal was "off the charts." (*Id.*) Dr. Kelter provided a current diagnosis as follows:

| | |
|---|---|
| Axis I: | Methamphetamine Dependence, with remission<br>Intermittent Explosive Disorder<br>Posttraumatic Stress Disorder |
| Axis II: | Deferred |
| Axis III: | Hepatitis C; severe seasonal allergies, physical pain from knee problems |
| Axis IV: | Health problems; possible neurological damage from meth abuse;<br>Recent incarceration |
| Axis V: | 45 |

(Tr. 584.) Dr. Kelter recommended that

> [g]iven Mr. Kingsmore's recent severe stresses, both psychological and medical, it is recommended that he work on his health and mental stability, without the addition[al] stress of working, at least for some months.  When ready, he also needs to resume treatment for his hepatitis C, which has the potential for inducing negative mental side effects.

(Tr. 584.)

An ALJ is required to conduct a two-part inquiry with regard to treating physicians, each step of which is analytically distinct.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  First, the ALJ must decide whether a treating doctor's opinion commands controlling weight.  *Krauser*, 638 F.3d at 1330.  A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2[9]).  If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process.  *Krauser*, 638 F.3d at 1330.  In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. §§ 404.1527(c), 416.927(c).[10]  *Id.*  The ALJ is not required to "apply expressly" every relevant factor.  *Oldham*, 509 F.3d at 1258.  "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."

---

[9] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[10] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

*Langley*, 373 F.3d at 1119 (quoting *Watkins*, 350 F.3d at 1300).  Finally, if the ALJ rejects the opinion completely, she *must* then give "'specific, legitimate reasons'" for doing so.  *Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."  *Langley*, 373 F.3d at 1121 (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original)).

The ALJ failed to conduct the second part of the two-part inquiry required in evaluating Dr. Kelter's opinion.  Here, the ALJ concluded that Dr. Kelter's opinions were not entitled to controlling weight because they were not well supported.  (Tr. 50.)  The ALJ then stated that Dr. Kelter had "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported."  (*Id.*)  The ALJ concluded that she had provided good reasons elsewhere in her decision to question the reliability of Mr. Kingsmore's subjective complaints.  (*Id.*)  For the reasons discussed below, this is insufficient and requires remand.

The second part of the ALJ's analysis fails for three reasons.  First, the ALJ failed to make clear how much weight she gave Dr. Kelter's opinions (including whether she rejected them outright).  This is error.  *Krauser*, 638 F.3d at 1330.  Second, the ALJ failed to provide good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight, if any, she assigned.  This is error.  *Id.*  Although the ALJ stated in conclusory fashion that Dr. Kelter's opinions were not "well supported," thereby appearing to address the

11

supportability factor, she nonetheless failed to explain precisely how Dr. Kelter's opinions lacked objective support.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (finding that psychological opinions may rest either on observed signs and symptoms or on psychological tests and constitute specific medical findings); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (explaining that a "true medical opinion" is one that contains a doctor's "judgment about the nature and severity" of a claimant's limitations).  Moreover, the ALJ failed to demonstrate that she considered any of the other regulatory factors in weighing Dr. Kelter's opinions, such as the fact of examination, the length of treatment relationship and frequency of examination, the nature and extent of the treatment relationship, consistency,[11] and Dr. Kelter's area of specialization.  *See* 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).  Finally, the ALJ improperly discounted and/or rejected Dr. Kelter's opinions because she concluded, without more, that Dr. Kelter's opinions were based on claimant's subjective complaints that she found incredible.  *Langley*, 373 F.3d at 1121.  Although credibility judgments are peculiarly the province of the finder of fact, such judgments by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record."  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317

---

[11] Elsewhere in her determination, the ALJ considered the opinions of Psychiatrist Leonel Rodarte, M.D., and Psychologist Michael R. Pitts, Psy.D., whose opinions she accorded significant weight stating they were "better supported by additional evidence in the record."  However, the ALJ does not explain or identify what "additional evidence" supported the weight she accorded their opinions, nor does she identify how their diagnoses provided evidence that Dr. Kelter's diagnoses were inconsistent with or not supported by the record as a whole.  An ALJ must provide a legally sufficient explanation for rejecting a treating physician's opinion in favor of an examining and/or nonexamining physician.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Further, the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  *Id.*

(3d Cir. 2000)).  Here, the record supports that Dr. Kelter's diagnoses were consistent, in part, with Dr. Rodarte's and Dr. Pitts' diagnoses.[12]

The ALJ's failure to properly analyze Dr. Kelter's opinions is not harmless error.  The Commissioner contends that Mr. Kingsmore cannot demonstrate any harmful error by the ALJ's failure to properly analyze Dr. Kelter's opinions because (1) Dr. Kelter's opinions were consistent with the ALJ's RFC finding; (2) Dr. Kelter's July 5, 2013, letter cannot establish that Mr. Kingsmore was disabled or that he had greater mental functional limitations than those contained in the ALJ's RFC finding; and (3) the ALJ reasonably considered Dr. Kelter's July 5, 2013, letter and determined it was not entitled to significant weight.  (Doc. 23 at 9.)  The Court is not persuaded.

The record evidence from Dr. Kelter triggered the ALJ's duty to seek further development of the record.  "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional information is readily available."  *Robinson*, 366 F.3d at 1084 (citing 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1)).  "The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden."  *Id.* (citing *White v. Barnhart*, 287 F.3d 902, 908 (10th Cir. 2001)).  Here, Dr. Kelter's notes do not address whether Mr. Kingsmore had any restrictions related to his ability to do work-related

---

[12] Dr. Kelter diagnosed Mr. Kingsmore with Axis I: Methamphetamine Dependence, with remission; intermittent explosive disorder; and posttraumatic stress disorder; and Axis II: Antisocial Personality Disorder.  (Tr. 465, 584.) Dr. Rodarte diagnosed Mr. Kingsmore with Axis I: mood disorder and history of polysubstance abuse; and Axis II: narcissistic personality disorder.  (Tr. 428-49.)  Dr. Pitts diagnosed Mr. Kelter with Axis I: cannabis abuse; rule out methamphetamine and stimulant abuse; methamphetamine dependence, in reported long term remission; and cocaine abuse, in reported long term remission; and Axis II: personality disorder, NOS, with narcissistic and antisocial traits; and rule out narcissistic personality disorder.  (Tr. 395.)  The opinions differed as to their respective clinical judgments regarding how Mr. Kingsmore's diagnoses and symptoms impacted his overall functioning. Dr. Kelter assessed a GAF of 45; Dr. Rodarte assessed a GAF of 60-65; and Dr. Pitts assessed a GAF of 55.  (Tr. 395, 435, 465, 584.)

mental activities.  In other words, there is no evidence that Dr. Kelter completed any kind of mental residual functional capacity assessment on Mr. Kingsmore's behalf.  As such, the ALJ's statement (Tr. 50) and the Commissioner's argument (Doc. 23 at 9) that the ALJ's RFC is consistent with the "restrictions indicated by the claimant's treating psychiatrist" are nonsensical because Dr. Kelter never assessed restrictions related to Mr. Kingsmore's mental capacity to do work-related mental activities.  Dr. Kelter did, however, diagnose Mr. Kingsmore with, *inter alia*, intermittent explosive disorder, posttraumatic stress disorder, antisocial personality disorder, and assessed a GAF of 45.  *See generally*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (considering GAF scores and expressing "concern" with scores of 46 and 50); *Lee v. Barnhart*, 117 F. App'x. 674, 678 (10th Cir. 2004) (unpublished) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . ." but "[a] GAF score of fifty or less, . . . does suggest an inability to keep a job.").  Dr. Kelter also recommended that Mr. Kingsmore be able to work on his health and mental stability without the additional stress of work for at least some months.  (Tr. 584.)  Although the Court agrees with the Commissioner that a statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that a claimant will be found disabled, 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1), the ALJ's responsibility did not end there.  *Robinson*, 366 F.3d at 1084.  Thus, in the absence of an assessment related to Mr. Kingsmore's ability to do work-related mental activities, and in presence of a GAF score of 45 and a recommendation that Mr. Kingsmore was unable to work, the ALJ's duty to seek further development of the record was triggered and she should have contacted Dr. Kelter for clarification before rejecting his opinion.  *Robinson*, 366 F.3d at 1084.  The ALJ failed to do so.

The Court will not adopt the Commissioner's post-hoc efforts to salvage the ALJ's failure to properly analyze Dr. Kelter's opinions. Here, the Commissioner attempts to supply possible reasons for the ALJ's determination that Dr. Kelter's opinions were not well supported. (*See* Doc. 23 at 10.) However, an ALJ's decision must be evaluated solely on the reasons stated in the decision. *Robinson*, 366 F.3d at 1084. The ALJ stated in conclusory fashion that Dr. Kelter's opinions were not well supported because Mr. Kingsmore's subjective complaints to Dr. Kelter were incredible. (Tr. 50.) As previously discussed, this is insufficient. Thus, "affirming [the Commissioner's] post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process." *Id.* (citing *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).

For the foregoing reasons, the Court finds the ALJ did not apply the correct legal standards in evaluating the opinions of Mr. Kingsmore's treating psychologist. *Krauser*, 638 F.3d at 1330. The Court, therefore, recommends that this matter be remanded for further proceedings. *Robinson*, 366 F.3d at 1085; *Jensen*, 436 F.3d at 1165 ("[t]he failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

**B.     The ALJ Failed to Properly Evaluate Dr. Blacharsh's Mental Residual Functional Capacity Assessment**

The ALJ stated that her RFC assessment was supported by the opinions of Dr. Rodarte, Dr. Pitts, "and the opinions of the State agency doctors." (Tr. 51.) Mr. Kingsmore argues that the ALJ erred by picking and choosing among the Section I moderate limitations indicated in State agency nonexamining medical consultant Jill Blacharsh, M.D.'s Mental Residual Functional Capacity Assessment ("MRFCA"). (Doc. 19 at 18-20; Doc. 24 at 3-6.) The Commissioner contends that the ALJ appropriately relied on Dr. Blacharsh's Section III

conclusions and that she was not required to specifically adopt or discuss each individual limitation described in Section I.  (Doc. 23 at 12-14.)  The Court is not persuaded.

The MRFCA form is used at the initial and reconsideration levels of the administrative process to document a claimant's mental RFC.[13]  POMS DI 24510.005.B.2.; POMS DI 24510.060.A.1; POMS DI 24515.007.3.  The psychological consultant makes administrative findings of fact that are based on the evidence, but are not in themselves evidence at the level of the administrative review process at which they are made.  20 C.F.R. §§ 404.1527(e)(1)(i), 416.927(e)(1)(i); POMS 24510.005.A.; POMS 24515.007.3.a.  Section I of the MRFCA provides a worksheet to ensure that the preparer has considered all of the listed pertinent mental activities in light of a claimant's degree of limitation.  POMS DI 25020.010.B.1.  Section III is for "explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."  POMS DI 24510.060.B.4.a. and B.4.b.  "Adjudicators must take the RFC assessment in Section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work."  POMS DI 25020.010.B.1.

At the ALJ and Appeals Council levels, what were administrative findings of fact become *opinion evidence* that the ALJ must evaluate and weigh using the relevant regulatory factors.  20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii) (describing evidence at the ALJ level and Appeals Council levels); 20 C.F.R. §§ 404.1527(e)(2)(i) and (ii), 416.927(e)(2)(i) and (ii) (describing ALJ's responsibility for reviewing opinion evidence); *see also* POMS DI

---

[13] Because of the complexity of the mental disorder evaluation, a special form is used to document the mental residual functional capacity decision, *i.e.,* what an individual can do despite his or her impairment.  POMS DI 24510.060A.1.  "If there are any changes in the functional limitations at reconsideration, the initial level MRFCA cannot be adopted and a new one will have to be prepared."  POMS DI 24510.066.B.

24515.007.3.b. (the ALJ will consider findings of fact made by medical and psychological consultants as expert opinion evidence); POMS DI 24515.013.A. (findings of fact made by State agency medical and psychological consultants become opinions at the ALJ and Appeals Council levels of review).  Other than the ultimate determination about whether or not a claimant is disabled, the ALJ must consider the entirety of a State agency consultant's findings as medical evidence.  20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (holding that while Section I worksheet observations are perhaps less useful to an ALJ than a doctor's Section III narrative RFC assessment that has adequately encapsulated worksheet observations, they are nonetheless medical evidence which cannot be ignored).  An ALJ is not bound by any findings or RFC assessments made by State agency medical consultants.   20   C.F.R.   §§ 404.1527(e)(2)(i),   416.927(e)(2)(i);   POMS   DI 24510.001.A.2.b.; *see also* SSR 96-8p, 1996 WL 374184, at *2 (RFC is assessed at each level of the administrative reviewed process based on all of the relevant evidence in the case record).  However,

> State agency medical or psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are experts in Social Security disability evaluation. *Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants* and other program physicians, psychologists, and other medical specialists *as opinion evidence*, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (emphasis added).

The Tenth Circuit has also specifically addressed the ALJ's responsibility in evaluating a State agency psychological consultant's MRFCA in light of the instructions printed on the forms and certain sections of the POMS that describe the separate functions of Sections I and III.

Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to moderate Section I limitations" and that

> [i]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).[14]   Tenth Circuit case law further instructs that there is no reversible error in evaluating opinion evidence or assessing a claimant's RFC *when an ALJ properly accounts for the effects of the limitations enumerated in Section I of the MRFCA.  See Nelson v. Colvin*, --- F. App'x ---, 2016 WL 3865865, at *2 (10th Cir. 2016) (finding no reversible error regarding the ALJ's mental RFC assessment because the ALJ effectively accounted for *all* the limitations indicated in Section I of the MRFCA) (emphasis in original); *Lee v. Colvin*, 631 F. App'x 538, 541-42 (10th Cir. 2015) (finding no reversible error regarding the ALJ's RFC assessment because the ALJ did not ignore the Section I limitations and the RFC assessment reflected the moderate limitations identified in Section I of the MRFCA); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (finding that the ALJ did not err in evaluating opinion evidence where he discussed only certain Section III findings because the ALJ acknowledged the distinction between Section I and Section III of the MRFCA and the Court found no contradiction between the two sections); *Carver*, 600 F. App'x at 619 (finding no reversible error regarding the ALJ's mental RFC assessment because the ALJ sufficiently captured the essence of psychological consultant's Section III narrative which had adequately encapsulated the Section I limitations).

Here, Dr. Blacharsh's Section III narrative both contradicts and fails to describe the effects of her Section I limitations.  In her MFRCA, Dr. Blacharsh indicated in Section I that

---

[14] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

Mr. Kingsmore was moderately limited in his ability to understand, remember, and carry out detailed instructions, but explained in Section III that he could understand, remember, and carry out detailed instructions.  (Tr. 409, 411.)  This is a contradiction.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (a moderate limitation is not the same as no impairment at all). Dr. Blacharsh indicated in Section I that Mr. Kingsmore was moderately limited in his ability (1) to work in coordination with or in proximity to others without being distracted by them, (2) to accept instructions and respond appropriately to criticism from supervisors, and (3) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but explained in Section III that he could interact appropriately with co-workers and supervisors. (Tr. 409-11.)  This is a contradiction.  *Id.*  Finally, Dr. Blacharsh indicated in Section I that Mr. Kingsmore had moderate limitations in his ability (1) to interact appropriately with the general public, (2) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but offered no explanation for these findings in Section III.  (Tr. 409-10.)  This fails to describe the effects of Section I limitations. *Id.*

The ALJ appears to have partially addressed Dr. Blacharsh's Section I findings that either contradicted or were not adequately explained in Section III, as she was required to do, *see Carver*, 600 F. App'x at 619 (an ALJ cannot "turn a blind eye to moderate Section I limitations"), because the ALJ rejected, in large part, Dr. Blacharsh's Section III narrative, and instead chose to adopt some, but not all, of Dr. Blacharsh's Section I moderate limitations.  For example, the ALJ's RFC assessment limited Mr. Kingsmore to understanding, remembering, and

executing simple instructions; to a work environment that is primarily object focused; and to only occasional interaction with the public.   (Tr. 42, 409-11.)   However, the ALJ's RFC assessment failed to account for or address Dr. Blacharsh's Section I moderate limitations regarding Mr. Kingsmore's ability (1) to accept instructions and respond appropriately to criticism from supervisors, (2) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (3) to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.   This is error. *Nelson,* --- F. App'x ---, 2016 WL 386865, at *2; *Lee*, 631 F. App'x at 541.   Moreover, these limitations were supported, at least in part, by Dr. Pitts, who assessed that Mr. Kingsmore's work history was consistent with an antisocial personality and that his persistence was historically poor.   (Tr. 396.)   As such, the ALJ improperly adopted certain Section I limitations while rejecting others, and provided no explanation for doing so.   This is also error.   *Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to finding of nondisability.")

For the foregoing reasons, the Court finds the ALJ did not apply the correct legal standards in evaluating Dr. Blacharsh's opinion.   The Court, therefore, recommends remand for further proceedings.   *Jensen*, 436 F.3d at 1165 ("[t]he failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

## V.  Conclusion

For the reasons stated above, the Court recommends that Mr. Kingsmore's Motion to Reverse or Remand (Doc. 19) be **GRANTED,** and that this matter be **REMANDED** to the Commissioner for further proceedings.

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c).  Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(c), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico.  A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.

**KIRTAN KHALSA**
**United States Magistrate Judge**